PLASTICOLOR MOLDED PRODUCTS,
Plaintiff–Counterdefendant,

v.

FORD MOTOR COMPANY,
Defendant–Counterclaimant.

No. CV 85–3863–AK (Tx).

United States District Court,
C.D. California.

May 9, 1988.

Harold L. Jackson, Stanley R. Jones, Jackson & Jones, Tustin, Cal., Richard B. Hoegh, Los Angeles, Cal., for plaintiff-counterdefendant, Plasticolor Molded Products, Inc.

Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, David C. Hilliard, Craig S. Fochler, Charles R. Mandly, Jr., Chicago, Ill., Lawler, Felix & Hall, Richard L. Fruin, Jr., Mark S. Lee, Los Angeles, Cal., for defendant-counterclaimant, Ford Motor Co.

## MEMORANDUM OPINION AND ORDER

KOZINSKI, Circuit Judge, Sitting by Designation.

This lawsuit was brought by Plasticolor Molded Products, Inc., which seeks a declaratory judgment of its rights to use Ford Motor Company trademarks on the automobile accessories it produces. Ford then counterclaimed for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) (1982), and California law. On November 30, 1987, the court heard argument on Ford's motion for summary judgment under federal and state law. This memorandum opinion and order memorializes the findings and conclusions of the court rendered orally at the hearing.

## FACTS

The court finds that the following facts were proved by Ford in its moving papers and not controverted by Plasticolor in its opposition:

1. Ford is a Delaware corporation with its principal place of business in Dearborn, Michigan. It has for many decades manufactured, advertised and sold motor vehicles, parts and accessories, including floor mats, mudflaps and step treads (collectively, "floor mats"). It has advertised its automotive parts and accessories extensively throughout the country, and has sold them through independent Ford dealers. In addition, it sells its parts through repair shops, discount stores and other mass merchandisers.

2. Ford has long used various arbitrary and distinctive marks to identify its products, including FORD, AEROSTAR, BRONCO, CAPRI, COUGAR, COURIER, ESCORT, EXP, FIESTA, LYNX, MERCURY, MUSTANG, PINTO, RANGER, TEMPO, THUNDERBIRD, and TOPAZ, as well as certain pictorial designs, among them the Mustang "running horse" and Thunderbird symbols. Through Ford's long and extensive use of these trademarks, they have acquired a secondary meaning signifying Ford and its products, and have acquired substantial good will that increases Ford's recognition and the attractiveness of its products to consumers.

3. Ford has attempted to protect its trademarks through federal trademark registration. It owns federal registrations for the FORD trademark for a variety of auto-

motive products, including a 1929 registration for floor mats. Ford has also registered its BRONCO, CAPRI, COUGAR, COURIER, FIESTA, MERCURY, PINTO, RANGER, and THUNDERBIRD trademarks; these registrations have become incontestable and are conclusive evidence of Ford's exclusive rights to the marks. *See* 15 U.S.C. §§ 1065, 1115(b) (1982). Ford has also registered its Mustang and Thunderbird designs.

4. Plasticolor is a California corporation with its principal place of business in Fullerton, California. Since 1971 it has engaged in the business of manufacturing and selling plastic automobile accessories, including floor mats. It produces these items in a variety of designs and colors, some bearing designs or other graphics. Plasticolor sells its products through independent Ford dealers, automotive chains, catalog houses, mass merchandisers, van converters, repair shops and garages—many of the same outlets Ford uses for its own similar products or other parts. Plasticolor has promoted its products through brochures and industry trade shows, but has not engaged in substantial media advertising aimed at the consuming public.

5. In 1973, Plasticolor began selling small quantities of its accessories bearing Ford's PINTO trademark and Mustang design without license or any other authorization from Ford. Later, still without authorization, Plasticolor began selling mats and other accessories bearing other Ford Marks: FORD, CAPRI, BRONCO, MERCURY, COUGAR, COURIER, FIESTA, ESCORT, RANGER and the Mustang and Thunderbird designs. In choosing to use the Ford trademarks, Plasticolor relied on the success of the genuine Ford products sold under those marks and the good will that Plasticolor would be able to exploit.

6. Most of Plasticolor's mats bearing Ford marks are packaged with cardboard header cards bearing the word "Plasticolor"; some bear as well the description "Ford Custom Carpet Front." The header cards do not indicate that "Plasticolor" is the manufacturer, and there is no indication of any relation to Ford or disclaimer thereof. Plasticolor has distributed a not insubstantial number of mats without any header cards; moreover, it has distributed some bearing Ford trademarks to customers with the designation "O.E.," which is understood in the industry to mean "original equipment," even though the mats were not original equipment or authorized by Ford, the original equipment manufacturer.

## CONCLUSIONS OF LAW

### I. Lanham Act Claims

#### A. *Liability*

■ With respect to liability under the Lanham Act for trademark infringement and unfair competition, the court finds no genuine issue of material fact. The legal test is the likelihood of confusion. *See, e.g., Golden Door, Inc. v. Odisho,* 646 F.2d 347, 349 (9th Cir.1980); *New West Corp. v. NYM Co.,* 595 F.2d 1194, 1201 (9th Cir. 1979). Proof of likelihood of confusion does not require a showing of wrongful intent on the part of the alleged infringer; proof of such intent does, however, raise a presumption that confusion is likely. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157–58 (9th Cir.), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963); *Hillerick & Bradsby Co. v. Palm Springs Golf Co.,* 215 U.S.P.Q. 680, 684 (C.D.Cal.1982).

■ Plasticolor admits that it used Ford's marks knowingly; indeed, it used them in order to attract customers who own Ford automobiles or who want to have a symbol of Ford automobiles in their cars. Knowing use by an infringer of a trademark identical to that of the trademark owner is strong evidence of intentional infringement and likelihood of confusion. *See Fleischmann Distilling,* 314 F.2d at 157–58. This is particularly true where, as here, the marks are used by the trademark owner on identical or related products.

In support of its contentions as to likelihood of confusion, Ford introduced a scientifically conducted survey indicating customer confusion as to the source of the mats. The survey of nearly 300 consumers

in Los Angeles, Chicago and New York indicated that over three-quarters of those shown a display of Plasticolor mats bearing marks of various automotive manufacturers believed that the mats bearing the Ford name were produced or authorized by Ford. Such surveys have been accorded great weight in determining likelihood of confusion. *See, e.g., James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 278–79 (7th Cir.1976). The survey and declaration of Ford's expert, George Mantis, were highly persuasive in showing a substantial likelihood that customers would mistakenly believe that the mats were manufactured or authorized by Ford.

Plasticolor does attack the Mantis survey, presenting testimony and a declaration of its own expert, Ben Enis. Plasticolor's criticisms, however, amount to little more than nitpicking; they certainly do not counter the thrust, and intuitively appealing result, of the survey, that use of the FORD mark in that manner would confuse consumers as to Ford sponsorship.

The Mantis survey used only a mat bearing the FORD mark. However, it does provide strong support for the proposition that a mat bearing any Ford mark would confuse customers as to source. Plasticolor's purpose in adorning its products with the various Ford marks is to create a connection between the products and the Ford line of automobiles. The design would be futile if the consumer did not associate the name BRONCO or RANGER with the appropriate Ford car or truck; indeed, the mats are aimed precisely at a clientele consisting of owners of such vehicles. The survey results, moreover, are corroborated by the deposition testimony of Plasticolor's own witnesses, officers and employees, who admitted that the public would likely associate its products with Ford.

 That Plasticolor places its name on its header card does not prevent confusion. In general, the mere addition of an infringer's trade name to its product packaging does not avoid confusion and is therefore not a defense to trademark infringement. *See Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th

Cir.1980); *Rolex Watch U.S.A., Inc. v. Thalheimer Co.,* 217 U.S.P.Q. 964, 966 (N.D.Cal.1982). That principle applies in this case. Plasticolor's use of its name in small print is clearly overwhelmed by the use of the Ford trademark. Moreover, it could easily represent, in the manner currently used, a description of the product composition, or the name of a Ford licensee. In any event, the record discloses significant sales of Plasticolor mats without header cards or any other indication of origin other than the Ford mark, as well as sales of products bearing the inscription "O.E.," clearly suggesting Ford sponsorship.

The court concludes that use of the above-named Ford trademarks in the manner that Plasticolor has used them creates a substantial likelihood of confusion among consumers and the general public as to the source or sponsorship of floor mats bearing the Ford trademarks. This holding extends only to Plasticolor's products as presented on motion for summary judgment. Plasticolor has stated its intention to change its packaging, and the court does not express any view as to a new design.

### B. *Affirmative Defenses*
#### 1. Laches

The premise of Plasticolor's asserted defense of laches or acquiescence is that Ford knew and tacitly approved of—or at least failed to object to—Plasticolor's use of Ford's trademarks since the early 1970s. "More than the mere lapse of time, however, is necessary to establish laches; inexcusable delay which prejudices the defendant must be shown. Estoppel by laches does not bar a plaintiff who is not aware of the facts giving rise to his cause of action." *Golden Door, Inc. v. Odisho,* 437 F.Supp. 956, 968 (N.D.Cal.1977) (citation omitted), *aff'd,* 646 F.2d 347 (9th Cir.1980). Moreover, the defendant must have acted in reliance on the "false sense of security" engendered by the passage of time. *Whitman v. Walt Disney Prods., Inc.,* 263 F.2d 229, 231 (9th Cir.1958). To the extent acquiescence is a distinct defense, more than "merely passive consent" is required; the

trademark owner must have, "by affirmative word or deed, convey[ed] its implied consent." 2 J. McCarthy, *Trademarks and Unfair Competition* § 31:14, at 585 (2d ed. 1984). Plasticolor has failed to come forward with evidence sufficient to establish any material issue of fact as to any of these elements.

With respect to Ford's knowledge or tacit authorization of Plasticolor's use of its marks, Plasticolor generally relies on two factual assertions: (1) that Ford must have been aware of a growing industry devoted to supplying accessories emblazoned with the marks of various automobile manufacturers; and (2) that various Ford employees and representatives knew of Plasticolor's own production and sale of unlicensed Ford mats. The record, however, does not provide any support for these assertions. There are only sketchy indications that other parties in Plasticolor's line of business were manufacturing products bearing the Ford marks. In any event, it is well established that, absent dilution of the mark to the point of its becoming generic, which has certainly not occurred here, third-party infringement does not inure to the benefit of the accused infringer. *See Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1382 (9th Cir.1984).

Moreover, there is no evidence that Ford knew of or authorized Plasticolor's use of its marks in any sense that would raise estoppel against Ford. For most of the relevant period, Plasticolor was a minor participant in the market. Ford, on the other hand, is an extremely large corporation with thousands of employees, most of them having no role in trademark enforcement. There is evidence that Ford quality control monitors toured Plasticolor facilities during the time Plasticolor also produced licensed mats for Ford, and may have seen unlicensed products. Similarly, other Ford employees may have seen Plasticolor displays at industry trade shows or in brochures. But there is no evidence that any of those persons had any involvement in Ford legal or trademark affairs, that they should have known that the products were unlicensed, or that Plasticolor had any rea-

son to believe their knowledge would reasonably be imputed to the responsible officials at Ford. *See generally* 2 J. McCarthy, *supra* page 8, § 31:13, at 583 ("[i]n order to impute an agent's knowledge to a principal, it must be shown that the agent had duties with respect to trademark matters ...").

In fact, the only hard evidence is that the Ford employees did not realize that the Plasticolor products were unlicensed. For example, Ford had a strict policy of refusing to deal with any party that had misused or infringed its marks. During the time of Plasticolor's infringing use, however, Ford continued to do business with Plasticolor. Upon learning in 1984 of Plasticolor's unlicensed production of Ford mats, Ford stopped doing business with it and sent a cease and desist letter. This is persuasive evidence of Ford's lack of acquiescence in Plasticolor's infringement.

With respect to reliance, Plasticolor provides no specific evidence to show that it relied on its ability to use Ford trademarks in deciding to invest in the expansion of its business. Plasticolor's business grew generally, and it would likely have expanded its capacity in any event in order to produce floor mats decorated with designs other than Ford's trademarks. There is no evidence that it took any specific steps that it would not have otherwise taken.

### 2. Functionality

Plasticolor also argues that its use of Ford trademarks does not constitute infringement because the marks serve a functional, non-trademark purpose in that they do not serve as an indication of source but as a means by which car owners may decorate their cars and show pride in Ford ownership. In this circuit, at least, Plasticolor has strong support in *International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 918–19 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). *Job's Daughters* indicates that at least some use of Ford's trademarks for a non-trademark, functional purposes would not constitute infringement under the Lanham Act.

In this case, however, it is clear that Plasticolor's actual use of the Ford marks

has served both a trademark and a functional purpose. This case is therefore controlled by *Vuitton et Fils S.A. v. J. Young Enters.*, 644 F.2d 769 (9th Cir.1981), rather than *Job's Daughters. See Job's Daughters*, 633 F.2d at 919 ("[o]ur holding does not mean that a name or emblem could not serve simultaneously as a functional component of a product and a trademark"). To the extent that the use of the trademark creates confusion as to source, it is subject to the strictures of the Lanham Act.

## II. State Law Claims

The parties have barely touched on the claims arising under the California unfair competition statute, California Bus. & Prof. Code §§ 17000–17208 (West 1987), the California anti-dilution statute, Cal.Bus. & Prof.Code § 14330 (West 1987), and the common law of unfair competition. In particular, it appears that the anti-dilution statute may not be subject to the limitations imposed by *Job's Daughters* with respect to non-trademark uses. *See Job's Daughters*, 633 F.2d at 919 n. 11 (leaving open any further remedies that might be available under state unfair competition law); *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1362 (9th Cir. 1985) (en banc) (anti-dilution statute does not require confusion as to source). The parties having failed to establish a sufficient basis for resolving this issue, however, the court will deny summary judgment on state law claims without prejudice to renewal upon further briefing.

## ORDER

IT IS THEREFORE ORDERED THAT:

1. Ford's motion for summary judgment on its claim for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), is granted.

2. Ford's motion for summary judgment on its state-law claims is denied without prejudice.