**DAVIDOFF EXTENSION S.A. and Davidoff Et Cie., Plaintiffs,**

v.

**DAVIDOFF COMERCIO E INDUSTRIA LTDA., Surtidora Panamericana Inc., and Aero–Boutiques de Puerto Rico, Inc., Defendants.**

Civ. No. 89–0029(JP).

United States District Court,
D. Puerto Rico.

Aug. 31, 1990.

Fernando Pérez Colón, Jorge R. Dávila, González Badillo & Dávila, San Juan, P.R., for plaintiffs.

Jorge Luis Guerrero Calderón, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

Plaintiffs Davidoff Extension S.A. ("Davidoff Extension") and Davidoff Et Cie. have filed the instant case under the provisions of the Lanham Act, 15 U.S.C. §§ 1051–1127 ("the Act,") seeking monetary and equitable relief for defendants' alleged trademark infringement of the federally registered trademark "DAVIDOFF." Plaintiffs also claim relief under the laws of Puerto Rico related to trademark infringement and unfair competition. 28 U.S.C. § 1338(b). Plaintiff Davidoff Et Cie. alleges that it has been authorized by Davidoff Extension to use the DAVIDOFF trademark on and in connection with tobacco products and various smoker's articles.

Plaintiff Davidoff Extension claims that it owns the United States Trademark DA-VIDOFF because such trademark has been properly registered with the United States Patent and Trademark Office since November 9, 1976, and claims exclusive use of its trademark. Plaintiffs allege that following the federal registration of the DAVIDOFF trademark, defendant Davidoff Comercio E Industria, Ltda. began the sale and distribution in Puerto Rico of substandard quality cigars under a counterfeit DAVIDOFF trademark, all in violation of 15 U.S.C. §§ 1114(1), and 1125(a).

Defendant Davidoff Comercio E Industria Ltda. claims senior use of the trademark because it registered in 1982 and 1983 the DAVIDOFF trademark with the

Department of State Trademark Office of the Commonwealth of Puerto Rico. Davidoff Comercio E Industria Ltda. has filed a counterclaim against plaintiffs claiming that a stipulation and settlement agreement entered between plaintiffs and codefendants Surtidora Panamericana, Inc. and Aeroboutiques de Puerto Rico, Inc., constitutes unfair competition.[1] Upon these same grounds, Davidoff Comercio E Industria has also filed a cross-claim against codefendants Aeroboutiques of Puerto Rico, Inc. and Surtidora Panamericana, Inc. Davidoff Comercio E Industria Ltda. alleges that such settlement agreement is an unfair competition because it has adversely affected the sales of its products bearing the DAVIDOFF trademark allegedly owned by Davidoff Comercio E Industria Ltda.

This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338. The requisite Initial Scheduling and Pretrial Conferences were held and the case came to be tried by the Court. Based on the evidence submitted by the parties and after due deliberation, this Court now makes the following Findings of Fact and Conclusions of Law.

## I.  FINDINGS OF FACT

1.  Both plaintiffs, Davidoff Extension S.A., a corporation, and Davidoff Et Cie., a partnership, are organized under the laws of Switzerland.

2.  Defendant Comercio E Industria Ltda., now known as David Comercio E Industria, ("Comercio E Industria") is a partnership organized under the laws of Brazil.

3.  Defendants Surtidora Panamericana, Inc. and Aeroboutiques de Puerto Rico, Inc. are both corporations organized under the laws of Puerto Rico.

4.  On November 9, 1976, plaintiff Davidoff Extension S.A. registered the trademark "DAVIDOFF" at the United States

---

**1.** Among other things, the settlement agreement between plaintiffs and codefendants Surtidora Panamericana, Inc. and Aeroboutiques de Puerto Rico, Inc. provides that the codefendants will

not buy, stock, display for sale, offer for sale, advertise or use any products bearing any counterfeit or colorable imitation of plaintiff's DAVIDOFF trademark.

Patent and Trademark Office, under Registration No. 1,052,564, for Cigars, Cigarettes, Pipe Tobacco, Pipes, Cigar Cases, Cigarette Cases, Lighters for Cigars and Cigarettes, Refills for Lighters for Cigarettes and Cigars, and Matches. *See* Plaintiffs' Exh. 1.

5. On March 23, 1982, defendant Comercio E Industria registered trademark "DAVIDOFF" in the Department of State Trademark Office of Puerto Rico under Registration No. 23,984. Comercio E Industria also filed a statement to the effect that such trademark has been continuously used and applied to tobacco goods in its business in Puerto Rico since March 21, 1981. This registration applies only to tobacco.

6. On May 18, 1983, the Department of State Trademark Office of Puerto Rico issued the registration of the DAVIDOFF trademark to Comercio E Industria under trademark No. 24,714. This registration applies only for matches.

7. On May 18, 1983, the Department of State Trademark Office of Puerto Rico issued the registration of the DAVIDOFF trademark to Comercio E Industria under trademark No. 24,715. This registration applies for smoker's articles.

8. All of the parties in this case sell cigars, smoking tobacco and smoker's articles using the same trademark. Neither party had the other's permission to use the DAVIDOFF trademark. Upon an examination of both trademarks used by the parties in this case, the Court finds that such marks are indistinguishable. Both symbols can be used interchangeably. Moreover, the testimony of Mr. José Manuel Aponte, General Manager of Aeroboutiques of Puerto Rico, Inc. and Surtidora Panamericana, Inc., established actual consumer confusion between plaintiff's and defendant's tobacco products. Mr. Aponte's testified how various consumers had purchased Comercio E Industria's tobacco products bearing the DAVIDOFF mark from his duty-free stores, and disapproved of their

substandard quality as compared to the authentic Davidoff quality.

9. In September, 1982, Comercio E Industria made its first sale of cigars in Puerto Rico through codefendants Aeroboutiques de Puerto Rico, Inc., and Surtidora Panamericana, Inc. The last sale was made on February 28, 1988. These sales were made in interstate and foreign commerce. Both Aeroboutiques de Puerto Rico, Inc., and Surtidora Panamericana, Inc., bought and sold Comercio E Industria's products in the total sum of $70,000.00.

10. Mr. Hans Peter Koenig, Comercio E Industria's agent since 1981, admitted that before Comercio E Industria used the DAVIDOFF trademark in Puerto Rico, he had knowledge of plaintiff's use of the trademark in Switzerland. Mr. Koenig also admitted that he had been living in Switzerland from 1955 to 1975–76. During 1978, Mr. Koenig met with Dr. Schneider, who is the Director and President of Davidoff Extension and partner in Davidoff Et Cie., at Dr. Schneider's office in Switzerland. At the time of Koenig's visit, Dr. Schneider's office had various displays bearing the DAVIDOFF trademark. Dr. Schneider also testified that since 1971 the DAVIDOFF trademark has been advertised throughout Switzerland, and in other countries.

11. It was not until April, 1989, that plaintiffs began to sell cigarettes under the DAVIDOFF trademark in Puerto Rico. Plaintiffs will continue to sell their tobacco products in Puerto Rico. Comercio E Industria's products bearing the DAVIDOFF trademark were last sold in Puerto Rico during 1988.

12. Codefendants Aeroboutiques de Puerto Rico, Inc. and Surtidora Panamericana, Inc. entered into a settlement agreement with plaintiffs. As the result of this settlement, the Court entered a partial judgment and an injunction.

13. The parties stipulated that this would be all the evidence to be presented pertaining to defendants Aeroboutiques and Surtidora.[2]

2. Most of these findings of fact had been previ-
ously stipulated to by the parties at the time of

14. On August 10, 1983, the United States District Court for the Southern District of Florida, entered an Injunction and Judgment by Default against Defendant Comercio Industria, Ltda. (now Comercio E Industria) and in favor of Davidoff Extension, S.A. That Court held that: "Defendants' business card and sample box of cigars both bear the trademark 'Davidoff' and infringe plaintiff's registered trademarks." The Court further enjoined Comercio Industria, Ltda. "from directly or indirectly using the name 'Davidoff' or any similar name in connection with any commerce in the United States involving tobacco or smokers' products, whether by use as a business name, trademark, service mark or any other designation...." *See* Plaintiffs' Exh. 10.

## II. CONCLUSIONS OF LAW

A. *Federal and State Trademark Infringement*

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), provides that,

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

\* \* \* \* \* \*

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

In similar form, Puerto Rico's Trademark Statute, 10 L.P.R.A. § 202, provides in pertinent part that,

Any person who without the consent of the owner of a trademark reproduces, counterfeits, copies or imitates any trademark and affixes the same to merchandise of substantially the same descriptive properties as those set forth in the registration, or to labels, signs, prints, packages, wrappers or receptacles intended to be used upon or in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration, or uses or shall have used such reproduction, counterfeit, copy or imitation in commerce in Puerto Rico, shall be liable to an action for damages, and if the case is decided for the plaintiff the court shall determine the amount of indemnity.

■ A brief examination of both these statutes demonstrates that likelihood of confusion is an essential element of a trademark infringement claim under both statutes. It is well settled that under the Lanham Act, an essential element of a claim for trademark infringement is the likelihood of confusion among prospective purchasers of plaintiff's products caused by the defendant's use of plaintiff's trademark. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816 (1st Cir.1987); *see also, Baker v. Simmons Co.*, 307 F.2d 458, 461 (1st Cir.1962). The same holds true under Puerto Rico's Trademark Statute. *See Cooperativa Cafeteros v. Colón Colón*, 91 P.R.R. 361, 380–89 (1964); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980).

■ When Congress enacted the Lanham Act, it aimed to furnish a uniform, inclusive federal law to regulate the use of trademarks in and affecting interstate commerce. *Park 'N Fly, Inc. v. Dollar Park & Fly*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Congress sought to protect the public from confusing and deceptive trademarks and to protect the rights of trademark owners in the goodwill of their products. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir.1980).

■ The instant case raises questions involving trademarks in interstate commerce where the Lanham Act applies. 15 U.S.C. § 1127. The breadth of the Act is equal to the congressional power under the Commerce Clause, Article 1, § 8, clause 3 of the Constitution. *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 558 (1st Cir.1982). Furthermore, "an adverse ef-

the Pretrial Conference, and before the hearing on the merits.

fect on the sales or goodwill of one whose trademark is used in interstate commerce is sufficiently substantial effect on interstate commerce to entitle the registrant to invoke the protection of the Lanham Act, even if the sales of the defendant are wholly intrastate." *Id.* at 559.

Through 15 U.S.C. § 1127, Congress has established the policy of prohibiting state interference with those rights afforded to federally registered trademarks. *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904 (7th Cir.1968). Section 1127 provides in pertinent part that:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in commerce from interference by *State, or territorial legislation* ...

In *Burger King,* a case which is similar to the one before us now, the Seventh Circuit resolved a conflict between the Lanham Act and a state trademark registration statute. The plaintiff, as the national and federally registered chain of Burger King restaurants, sought to enjoin the defendant, a local Matoon, Illinois, restaurant operating under the name Burger King, from operating a second restaurant in Charleston, Illinois. This second restaurant opened on September 26, 1962. Plaintiff's federal trademark registration was issued on October 3, 1961, and in July, 1959, defendant registered the name "Burger King" under Illinois law as their trademark. As a defense, the defendants argued, among other things, that the Illinois Trade Mark Act was designed to afforded them more protection than they had at common law, and that the Illinois Act afforded Illinois registrants exclusive rights to use trade marks through out the state. 403 F.2d at 906–7. Refusing defendant's argument, the Court relying on the priority of federal law held:

> [T]he policy ... to provide protection of federally registered marks used in interstate commerce, 'may not be defeated or obstructed by State law' and [if] state

law conflicts with the policy it 'must yield to the superior federal law.'

\* \* \* \* \* \*

> ... [W]hether or not Illinois intended to enlarge the [rights of Illinois trademark registrants under] common law ..., the Illinois Act does not enlarge its right in the area where the federal mark has priority.

403 F.2d at 907, 908.

■ In *Burger King,* a junior user's trademark registration under state law, could not strengthen its rights at the cost of the senior user's trademark rights under its federal registration. Furthermore, "state law cannot defeat or limit in any way the protection given to federally registered marks under the Lanham Act." *American Auto. Ass'n, (Inc.) v. AAA Ins. Agency, Inc.,* 618 F.Supp. 787, 798 (D.Tex. 1985). Therefore, Comercio E Industria's counterclaim for trademark infringement under Puerto Rico law is dismissed.

### B. *Constructive Notice*

■ The Lanham Act allows the owner of trademark used in commerce to register his trademark on the principal register at the United States Patent and Trademark Office. 15 U.S.C. § 1051. Registration of a trademark under the Act operates as constructive notice of the registrant's claim of ownership of the mark. 15 U.S.C. § 1072. Therefore, once registration is achieved, "no subsequent adoption and use of the same or a similar mark for the similar goods can be justified on a claim of good faith." 4A Callmann, *Unfair Competition, Trademarks, and Monopolies,* § 25.04 at 18 (4th ed. 1983). In fact, the constructive notice provision amends the common-law rule that permitted the acquisition of compatible rights by users of a trademark in distinct geographic areas, if the subsequent user adopted the mark without the knowledge of prior use. *Park 'N Fly, Inc. v. Dollar Park & Fly,* 469 U.S. 189, 200, 105 S.Ct. 658, 664, 83 L.Ed.2d 582 (1985).

■ The effect of Davidoff Extension's November 9, 1976 federal registration of

its "DAVIDOFF" trademark is to impose notice on everyone, including defendant Comercio E Industria, of plaintiff's claim of ownership of its registered trademark. The constructive notice effect of 15 U.S.C. § 1072 means that the use of a name or mark which is the same or confusingly similar to the mark "DAVIDOFF" as set forth in plaintiff's federal registration certificate, cannot be justified by a claim of innocence, good faith or lack of knowledge on the part of a junior user. Section 1072 affords the registrant nationwide protection for its registered mark, regardless of the geographic area in which the registrant actually utilizes his trademark. *See John R. Thompson Co. v. Holloway,* 366 F.2d 108, 115 (5th Cir.1966); *Dawn Donut Company v. Hart's Food Stores, Inc.,* 267 F.2d 358, 362 (2d Cir.1959).

Most importantly, the constructive notice provision of 15 U.S.C. § 1072, establishes that the

> owner of a federal registration ... has the security of knowing that no one else may, henceforth legitimately adopt his trademark and create rights in another area of the country superior to his own. In this respect, [15 U.S.C. § 1072] is perhaps, the best example of the intent of Congress to provide for a thriving business environment by granting nationwide protection to expanding business.... [I]t would be illogical and inconsistent

with the objectives of the Lanham Act, *not to provide for nationwide coverage* where there is more than one registration—provided there will be no public confusion created thereby.

*In re Beatrice Foods Co.,* 429 F.2d 466, 472–73, 57 C.C.P.A. 1302 (1970).[3]

■ Defendant Comercio E Industria contends that Davidoff Extension never intended, nor does now intend to expand and use its trademark in Puerto Rico's geographical area. Section 1115(b) establishes a limited area defense which might be available for the defendant, provided it can demonstrate:

> (1) that it adopted the mark *without knowledge* of plaintiff's prior use; (2) that its use predates plaintiff's registration; (3) that its use in the disputed area has been continuous since that time; and (4) the extent of the disputed area at the time plaintiff received its registration. (emphasis added).

*Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 640 (D.C.Cir.1982) (quoting 2 J. McCarthy, *Trademarks and Unfair Competition* 235–36 (1973)). This exception is based on common law trademark protection for remote users. *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1918). A junior user may invoke the § 1115(b)(5)[4] and have the right to

---

3. Congress' intent in enacting the Lanham Act can be evidenced from the following:

> [T]rade is no longer local, but is national. Marks used in interstate commerce are properly the subject of Federal regulation. It would seem as if national legislation along national lines securing to the owners of trademarks in interstate commerce definite rights should be enacted and should be enacted now.
>
> There can be no doubt under recent decisions of the Supreme Court of the constitutionality of a national act giving substantive as distinguished from merely procedural rights in trade-marks in commerce over which Congress has plenary power, and when it is considered that the protection of trademarks is merely protection of good will, to prevent diversion of trade through misrepresentation, and the protection of the public against deception, a sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them. H.R.Rep. No. 219, 79th Cong. 1st Sess.

4 (1945); S.Rep.No. 1333, 79th Cong. 2d Sess. 5–6 (1946), U.S. Code Cong.Serv.1946, p. 1274.

4. 15 U.S.C. § 1115(b) provides in pertinent part:

> (b) If the right to sue the registered mark has become *incontestable under section 1065* of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defense or defects is established:
>
> ... (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior uses and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this chapter or publication of the mark under subsection (c) of section 1062 of this title: *Provided,*

continued use of an otherwise infringing mark in a remote geographical area only if such use was established prior to the federal registration of the trademark. *Thrifty Rent–A–Car System v. Thrift Cars, Inc.*, 831 F.2d 1177, 1181 (1st Cir.1987). Therefore, a "junior user is permitted to maintain a proprietary interest in the mark even though it has no general federal protection through registration." *Id.*

■ In the instant case, the parties stipulated that Comercio E Industria initially used the DAVIDOFF trademark in Puerto Rico on March 21, 1981. Comercio E Industria cannot claim that it adopted the DAVIDOFF trademark without knowledge of plaintiff's November 9, 1976, registration because, such registration constitutes constructive notice upon it. *See* 15 U.S.C. § 1072. Therefore, Comercio E Industria is barred from asserting this limited area defense.

Related to this geographical issue, defendant Comercio E Industria relying on *Dawn Donut Company v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir.1959), also alleges that it has never been Davidoff Extension's intention to market its tobacco products in Puerto Rico. Therefore, according to Comercio E Industria, plaintiff is not entitled to injunctive relief. Defendant further alleges that plaintiff's United States Trademark does not include Puerto Rico as one of the places in which plaintiffs intend to use their trademark for tobacco products. In *Dawn Donut*, the Second Circuit held that under 15 U.S.C. § 1114, the registrant may enjoin only that concurrent use which creates a likelihood of public confusion as to the origin of the products in connection with which the marks are used. Therefore if the use of the marks by the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets, with no likelihood that the registrant will expand his use into defendant's market, so that no public confusions is possible, then the registrant is

*however,* That this defense or defect shall apply only for the area in which such continu-

not entitled to enjoin the junior user's use of the mark. (Citations omitted). 267 F.2d at 364.

However, under the specific facts in *Dawn Donut*, the Court found that there was no likelihood of confusion from the concurrent use of a trademark involving the retail sales of doughnuts and other goods in separate trading areas, because there was *no present likelihood* that plaintiff (a senior user and federal registrant) *would expand its retail use of its trademark into the defendant's (junior user) market area.* 267 F.2d at 360. (Emphasis added). The Second Circuit expressly held that because of the constructive notice provision of 15 U.S.C. § 1072, "should the plaintiff expand its retail activities into ... [defendant's area,] upon proper application and showing to the district court, it *may enjoin defendant's use of the mark." Id.* (Emphasis added).

■ Consequently, in order to uphold a claim for injunctive relief, a plaintiff is not required to demonstrate that the trademarks are presently being employed concurrently in the same trading area. Therefore, the plaintiff (federal registrant) only needs to show that an expansion into the defendant's market is likely in the normal course of its business. 267 F.2d at 364 n. 4.

■ In the instant case, Comercio E Industria cannot claim that Davidoff Extension will not likely expand its business in the Puerto Rican market, because both parties stipulated that since April, 1989, plaintiffs started to sell cigarettes in Puerto Rico under the DAVIDOFF trademark, furthermore, that plaintiffs were to continue selling their tobacco products in Puerto Rico. Therefore, Davidoff Extension may enjoin Comercio e Industria's use of the DAVIDOFF trademark.

C. *Registration as Prima Facie Evidence*

■ The registration of a trademark by the Federal Patent and Trademark Office

ous prior use is proved. . . .

establishes a rebuttable statutory presumption of ownership of the trademark and the validity of the registration. 15 U.S.C. § 1057(b). Section 1057(b) states that:

A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate subject to any conditions or limitations stated in the certificate.

Therefore, when registration is made under the Lanham Act, the burden of proof is shifted from the Federal registrant, who under common law trademark infringement action would have to establish his rights to exclusive use, to the State registrant, who must present sufficient evidence to rebut the presumption. *Keebler Co., supra,* 624 F.2d at 373. In turn, a defendant may rebut such presumption by a preponderance of the evidence. *Id.* In this case, defendant Comercio E Industria presented no evidence to rebut the validity of plaintiff Davidoff Extension's federally registered trademark. Therefore, plaintiff's prior federal registration prevails over defendant's subsequent state registration.

### D. *Likelihood of Confusion*

■■■ The First Circuit has recognized the following eight elements that are to be considered in evaluating likelihood of confusion:

(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of plaintiff's mark. (Citations omitted).

*Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 29 (1st Cir.1989) (quoting *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 817 (1st Cir.1987)); *see also*

*Purolator, Inc. v. EFRA Distributors,* 687 F.2d 554, 559 (1st Cir.1982); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 486–87 (1st Cir.1981).

Whether there is a likelihood of confusion in this case, we must consider all these factors because, no one factor is essentially determinative. *Volkswagenwerk,* 814 F.2d at 817; *Pignons,* 657 F.2d at 487–92. We now weigh the eight factors in the above order and apply them to the instant case.

### (1) Similarity of the marks.

When ascertaining similarity, the focus is on the total effect of the designation, rather than a comparison of the individual features. *Pignons,* 657 F.2d at 487. Comercio E Industria has predominantly displayed in all of its tobacco products the DAVIDOFF trademark, such tradename appears in plaintiffs' products as well. These "words may be recognized as similar because of *sound, appearance* ..., and a finding of similarity may be based on appearance alone." *Volkswagenwerk,* 814 F.2d at 817. Here, there can be no doubt that the marks are similar in sound and appearance, in fact they are identical. The script utilized in writing the mark "Davidoff" is almost indistinguishable between plaintiffs' and defendant's logo. Moreover, Comercio E Industria's packaging of its tobacco products is interchangeable with plaintiffs. Therefore, because the "knowing use by an infringer of a trademark identical to that of the trademark owner is strong evidence of intentional infringement and likelihood of confusion," we find that this factor has been met. *Plasticolor Molded Products v. Ford Motor Co.,* 698 F.Supp. 199, 201 (C.D.Cal.1988).

The First Circuit has ruled that "when one adopts a mark similar to one already in use, there is an affirmative duty to avoid any likelihood of confusion." *Volkswagenwerk,* 814 F.2d at 817. In the instant case, Comercio E Industria presented no proof to demonstrate that they acted affirmatively to avoid any likelihood of confusion when they adopted for their use the DAVIDOFF mark. Therefore, we conclude that there is

an indistinguishable similarity of the trademarks.

(2) The similarity of the goods.

In relation to this factor, both parties have stipulated that they sell cigars and smoking tobacco products using the same trademarks. Therefore, under this factor there is a strong likelihood of confusion.

(3) The relationship between the parties' channels of trade.

(4) The relationship between the parties' advertising.

(5) The classes of prospective customers.

Because these three factors are interrelated they are generally considered together. *Volkswagenwerk*, 814 F.2d at 818; *Pignons*, 657 F.2d at 488. In the present case, the parties stipulated that they have sold tobacco products bearing the same trademark in interstate and foreign commerce, and that since March 21, 1981 Comercio E Industria commenced to sell tobacco products bearing the DAVIDOFF trademark in Puerto Rico.

Dr. Ernest Schneider, Director and President of Davidoff Extension and partner in Davidoff Et Cie., testified that since 1971 the DAVIDOFF trademark has been advertised throughout Switzerland, and in other countries. In addition, defendant Comercio E Industria's letterhead also predominantly displays the DAVIDOFF logo. The class of prospective customers of each party's tobacco products and smoker's articles are the same: smokers, particularly those interested in high quality tobacco products.

(6) Evidence of actual confusion.

The evidence presented by plaintiffs amply demonstrates actual confusion by the consumers over the parties' products. As a matter of fact, Mr. José Manuel Aponte, Aeroboutiques' General Manager testified that his business had received various complaints regarding Comercio E Industria's tobacco products bearing the DAVIDOFF trademark. These complaints dealt with the quality of the tobacco products sold in the eight duty-free Aeroboutiques stores

located at Luis Muñoz Marín International Airport, in San Juan, Puerto Rico.

(7) The defendant's intent in adopting its mark.

(8) The strength of plaintiffs' mark.

As previously stated, the effect of plaintiffs' November 9, 1976 federal registration of their DAVIDOFF trademark was to impose constructive notice upon everyone, including Comercio E Industria, of the ownership of its trademark. 15 U.S.C. § 1072. Therefore, when Comercio E Industria registered "its" trademark, which is identical to Davidoff Extension's trademark, with the Department of State of Puerto Rico's Trademark Office, it had the affirmative duty to avoid any likelihood of confusion with plaintiffs' trademark which was already federally registered and in use. *Volkswagenwerk*, 814 F.2d at 817. Because Comercio E Industria was, since November 1976, on constructive notice of plaintiffs' federal registration of the DAVIDOFF trademark, we find that it has, intentionally adopted for its own use plaintiffs' trademark, and therefore, has acted in bad faith. Moreover, defendant has previously relied on the good will of plaintiffs' trademark for its own profit.

### E. *Laches*

As an equitable defense, Comercio E Industria asserts that under the circumstances of this case, plaintiffs' claims are barred because, it has been utilizing the DAVIDOFF trademark in Puerto Rico since 1981, and that it was not until 1989 that plaintiffs filed the instant case. In essence, Comercio E Industria's defense is one of estoppel by laches.

It is well settled law that courts of equity may decline relief to those who have postponed the assertion of their rights for an unreasonable period of time, and are thereby penalized for lack of due diligence in failing to commence timely proceedings. *See* Callmann, *supra*, at § 22.21; Wright & Miller, *Federal Practice and Procedure: Civil* § 2946. The defense of estoppel by laches is an affirmative defense, and defen-

132

dant has the burden of proving it. Callmann, *supra*, at § 22.21.

■■■ The defense of laches is reserved for those unusual cases where a plaintiff's protracted acquiescence persuades a defendant to undertake substantial activities in reliance on the acquiescence. *McNeil Laboratories, Inc. v. American Home Products Corp.*, 416 F.Supp. 804, 809 (D.N.J. 1976). As aptly stated by the Supreme Court:

> Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense ...
>
> [L]aches is an equitable defense and ... it can certainly be raised only by one who comes into equity with clean hands.

*Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961).

In relation to trademark litigation, the "effect of the defense of laches is that the plaintiff, by his delay has permitted the defendant to develop a goodwill symbolized by a trademark identical or similar to his own." Callmann, *supra*, at § 22.27.

However, "estoppel by laches is *not* available as a defense to a defendant in a trademark infringement or unfair competition case where its own actions have been calculated to trade upon plaintiff's reputation." *Jordan K. Rand, Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. 587, 594 (D.P.R. 1982) (Emphasis added). *See also Baker v. Simmons Co.*, 307 F.2d 458 (1st Cir.1962). Furthermore, the Supreme Court in *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 419, 36 S.Ct. 357, 362, 60 L.Ed. 713 (1916), noted:

> As to laches and acquiescence, it has been repeatedly held, in [trademark] cases where defendants acted fraudulently or with knowledge of plaintiffs' rights, that relief by injunction would be accorded although an accounting of profits should be denied.

■■■ In the case at bar, Comercio E Industria's actions were calculated to trade upon Davidoff Extension's reputation. First, the defendant was constructively notified of plaintiff's ownership of the trademark since November of 1976, the date of plaintiff's trademark was registered with the United States Patent and Trademark Office. 15 U.S.C. § 1072. Davidoff Extension's federal trademark certificate also constitutes prima facie evidence as to the validity of its registration, 15 U.S.C. § 1057(b). Second, Comercio E Industria has knowingly used a trademark which is identical to that of Davidoff Extension and this comprises strong evidence of its intentional infringement of plaintiff's trademark rights. *See Plasticolor Molded Products v. Ford Motor Co.*, 698 F.Supp. 199, 201 (C.D.Cal.1988). Therefore, because the evidence demonstrates that Comercio E Industria's conduct was calculated to trade upon plaintiff's reputation through the use of plaintiff's registered trademark, the defense of laches is not available to the defendant.

### F. *Comercio E Industria's Counterclaim and Cross-claim.*

■■■ As previously stated, Comercio E Industria has filed both a counterclaim against plaintiffs and a cross-claim against codefendants Aeroboutiques and Surtidora alleging unfair competition. Comercio E Industria contends that the settlement agreement among plaintiffs and said codefendants constitutes unfair competition because, the codefendants, not wishing to litigate the issues involved in this case, agreed not to buy Comercio E Industria's products. The parties also stipulated that all the evidence to be presented during trial pertaining to defendants Aeroboutiques and Surtidora was their settlement agreement with the plaintiffs.

It is well settled that a settlement agreement is not admissible in evidence to establish liability. *Caraballo Ramírez v. Arosua*, 104 D.P.R. 474 (1975). Fed.R.Evid. 408. Rule 408 expressly provides that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to the validity or amount, is not admissible to prove liabili-

ty for or invalidity of the claim or amount.

Therefore, Comercio E Industria's counterclaim and cross-claim are hereby DISMISSED as matter of law.

### G. *Remedies*

Based on the foregoing, the Court finds that Comercio E Industria has, without plaintiffs' consent, used an identical reproduction of plaintiff's federally registered mark in connection with the sale, distribution and advertising of its tobacco products, and such use is likely to cause confusion. 15 U.S.C. § 1114(1)(a). This Court further finds, that Comercio E Industria has used plaintiff's trademark or symbol on its tobacco products which is likely to cause confusion, mistake or deception as to Comercio E Industria's affiliation with Davidoff Extension, or Davidoff Extension's approval of Comercio E Industria's tobacco products, and has misrepresented the nature or quality of its products. 15 U.S.C. § 1125(a)(1), (a)(2).

■■■ Plaintiffs request an award for damages and loss of profits as the result of Comercio E Industria's infringing activities, and that such award be trebled as provided by 15 U.S.C. § 1117(b). Although our primary task is to make violations of the Lanham Act unprofitable to the infringing party, *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir.1982), the plaintiffs in the instant case, like any other civil case, have the burden of proving by competent evidence what their damages were. Section 1117(a) provides that: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Plaintiffs herein have failed to sustain their burden of proving what Comercio E Industria's sales, if any, actually were. The only evidence of sales in this case, was the following stipulation between the parties: "Both defendants Surtidora

and Aeroboutiques bought and sold products of the other codefendant [Comercio E Industria] herein ..., in the total sum of $70,000.00." The products were bought from codefendant Comercio E Industria. There is no evidence as to the sales price of Comercio E Industria's products to the other codefendants. Therefore, we cannot assume a base sales price to impose the damages as provided by law. Both Surtidora and Aeroboutiques settled with plaintiffs and entered into a consent decree and partial judgment. Therefore, plaintiffs are not entitled to recover damages under 15 U.S.C. § 1117(a).

Pursuant to § 1117(b) plaintiffs are entitled to reasonable attorney's fees in the case of any violation of 15 U.S.C. § 1114(1)(a) that consists of intentionally using a mark, knowing such mark is a counterfeit mark as defined by 15 U.S.C. § 1116(d).[5] Plaintiffs are also entitled to costs, and attorney's fees. Pursuant to 15 U.S.C. § 1116, plaintiffs are further entitled to injunctive relief.

### H. *Injunctive Relief*

Based upon the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED:

1. Comercio E Industria and its officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, are permanently enjoined from engaging in any of the following acts:

(a) Using the "DAVIDOFF" trademark or any variations thereof, or any other name or mark confusingly similar to "DAVIDOFF," either alone or in combination with other words or symbols, in the marketing, sale, distribution, promotion, advertising, identification of cigars or any other goods or the rendering of services; and

(b) From using any logo, tradename, or trademark in any form or manner that would tend to identify or associate or false-

---

5. Section 1116(d)(1)(B)(i) provides in part:
   [A] counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods

or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered....

**134**

ly represent or which has the effect of falsely representing the Defendant or its business or services with Plaintiffs, in the marketing, sale, distribution, promotion, advertising, identification, or in any other manner in connection with any business or services; and

(c) From otherwise infringing plaintiffs' registered trademark; and

(d) From otherwise engaging in unfair competition with Plaintiffs; and

(e) From using any reproduction, counterfeit, copy or colorable imitation of the "DAVIDOFF" trademark in connection with the marketing, sale, distribution, promotion, advertising, identification, or any other manner in connection with its business or services.

(f) Defendant Comercio E Industria is FURTHER ORDERED to cancel and withdraw any and all registrations of the "DAVIDOFF" trademark with the Department of State Trademark Office of the Commonwealth of Puerto Rico. The Secretary of State of the Commonwealth of Puerto Rico is directed to cancel and dismiss any such trademark registration or petition for registration by defendant.

(g) Defendant Comercio E Industria shall deliver to the Clerk of this Court for impounding all goods, labels, wrappers, boxes, shipping cartons, advertisements, catalogues, brochures, stationery and any other material in their possession or direct control, bearing the "DAVIDOFF" designation or trademark.

2. Defendant Comercio E Industria shall promptly comply with the terms of the foregoing injunction, and Defendant shall be in full compliance within thirty (30) days after the entry of judgment.

3. Within forty-five (45) days after the entry of judgment in this case, Defendant shall file with the Court and serve on plaintiffs' attorney a report in writing under oath setting forth the actions taken by Defendant to comply with the terms herein.

4. Pursuant to 15 U.S.C. § 1117 and Rule 54(d) of the Federal Rules of Civil Procedure, Plaintiffs are awarded costs and attorney's fees.

5. Judgment shall be entered in accordance with the terms of this Opinion and Order.

IT IS SO ORDERED.