**VMG ENTERPRISES, INC., Plaintiff,**

v.

**F. QUESADA & FRANCO, INC., Defendant–Counterclaimant.**

**Civ. No. 91–2558 (RLA).**

United States District Court, D. Puerto Rico.

March 30, 1992.

Edgardo Cartagena–Santiago, Brown Newsom & Cordova, Hato Rey, P.R., Kenneth R. Nowakowski, Whyte & Hirschboeck S.C., Milwaukee, Wis., for plaintiff.

José M. Muñoz–Silva, Mayaguez, P.R., Edwin Toro Goyco, Hato Rey, P.R., for defendant-counterclaimant.

## OPINION AND ORDER

ACOSTA, District Judge.

Plaintiff, VMG Enterprises, Inc. ("VMG") filed this case under the provisions of the Lanham Act, 15 U.S.C. §§ 1051–1127, seeking monetary and equitable relief[1] for defendant's trademark infringement of plaintiff's federally registered trademark, BABY'S CHOICE.

VMG claims it is the owner of a concurrent use registration for the trademark BABY'S CHOICE, registered in the principal Register of the United States Patent and Trademark Office under Registration Number 1,564,375, granted on November 7, 1989.

Plaintiff also avers that its concurrent use registration grants it exclusive rights to use the trademark BABY'S CHOICE in the entire United States except for specifically described geographic areas and that Puerto Rico is not one of the excepted areas. VMG also alleges that on dates subsequent to its trademark registration and use of the mark in Puerto Rico, and without its authorization, defendant, F. Quesada & Franco, Inc. ("Quesada"), commenced the sale in Puerto Rico of disposable baby diapers not manufactured by VMG, and sold under the trademark BABY'S CHOICE, all in violation of 15 U.S.C. §§ 1114(1) and 1125(a).

On January 10, 1992 (docket No. 5) defendant filed an answer to the complaint essentially denying plaintiff's trademark rights, and counterclaimed for cancellation of plaintiff's concurrent trademark registration and damages under the antitrust laws. Defendant bases both its defenses and the counterclaim on three theories: (1) the existence of agreements to which plaintiff was a party and which defendant alleg-

---

1. Plaintiff petitioned a temporary restraining order, preliminary and permanent injunction.

es are in violation of the antitrust laws of the United States; (2) acts by plaintiff which have allegedly "destroyed" the distinctiveness of the BABY'S CHOICE trademark upon which the complaint is based; and (3) a denial of the existence of the likelihood of confusion between the product sold by defendant and plaintiff.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and under 15 U.S.C. § 1121(a).

## I—PROCEDURAL BACKGROUND

On January 14, 1992 plaintiff filed a motion for preliminary injunction. On January 15, 1992 this Court issued an Omnibus Order (docket No. 10) which, inter alia, set a hearing on the preliminary injunction petition for February 13, 1992 and ordered defendant to file a brief specifically addressing its defenses of loss of distinctiveness of the trademark and misuse of the trademark as violative of the antitrust laws.

Based on the evidence submitted by the parties, the pleadings, the depositions on record, the stipulated facts and after due deliberation, this Court makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW.

## II—FINDINGS OF FACT

1. Plaintiff is a Washington corporation with its principal place of business in Vancouver, Washington.

2. Plaintiff manufactures and sells disposable baby diapers in portions of the United States, including Puerto Rico, under the trademark BABY'S CHOICE.

3. Defendant is a Puerto Rico corporation with its principal place of business in Ponce, Puerto Rico.

4. Plaintiff is the owner of a November 7, 1989 Concurrent Use Registration for the mark BABY'S CHOICE for disposable baby diapers on the Principal Register of the United States Patent and Trademark Office under Registration No. 1,564,375.

5. Universal Converter, Inc. ("UCI") manufactures the BABY'S CHOICE diapers sold by defendant in Puerto Rico.

UCI is the owner of Concurrent Use Registration No. 1,564,376 which covers the areas excepted in VMG's registration.

6. Plaintiff's Concurrent Use Registration covers the entire United States except for specifically described geographic areas. Puerto Rico is not one of the excepted geographic areas.

7. VMG adopted and began using the BABY'S CHOICE mark on disposable diapers in interstate commerce on January 8, 1985 and applied for federal registration of the mark on March 8, 1985. UCI's first use of the mark in state commerce was December 1, 1984, with its first use in interstate commerce on January 15, 1985.

8. Upon VMG's application for federal registration, UCI filed opposition proceedings pursuant to Section 13 of the Lanham Act, 15 U.S.C. § 1063, and also filed an application to register its mark on May 17, 1985.

9. The parties settled their differences by means of a 1986 concurrent use agreement and agreed to file concurrent registration proceedings before the U.S. Patent and Trademark Office ("The Trademark Office").

10. VMG and UCI were issued concurrent use registrations by the Trademark Office on November 7, 1989. Their respective certificates of registration contain trademark territorial limitations identical to the areas set forth in the parties' 1986 Agreement.

11. In 1990–91, VMG and UCI engaged in litigation over the scope of the 1986 agreement and the resulting concurrent use registrations, upon VMG's sale of goods bearing the marks GIRL's CHOICE and BOY's CHOICE into the territory covered by UCI's registration. UCI's infringement suit against VMG was resolved by the 1991 Settlement Agreement, which clarified the scope of the 1986 Agreement.

12. VMG has sold its disposable baby diapers under the BABY'S CHOICE mark in Puerto Rico since at least May 1990, through Argüelles, Inc., and AA Distributors, Inc. (collectively "Argüelles") a Puerto Rico distributor.

13. Argüelles is presently the only distributor authorized by VMG to use the BABY'S CHOICE mark in Puerto Rico.

14. Quesada has been selling diapers in Puerto Rico with the trademark BABY'S CHOICE, manufactured or supplied by UCI since November, 1991.

15. VMG has not authorized Quesada to sell disposable baby diapers bearing the BABY'S CHOICE trademark.

16. On November 29, 1991 Quesada received a letter from plaintiff's counsel which advised Quesada that Argüelles was VMG's only authorized distributor in Puerto Rico and that Quesada's sale of BABY'S CHOICE diapers was illegal and contrary to VMG's trademark rights. The letter also advised Quesada it had ten days to discontinue sales and retrieve previously sold merchandise or VMG would be forced to resort to the Courts.

17. On December 9, 1991, Quesada received a letter from plaintiff's counsel reiterating its demand that Quesada desist from selling in Puerto Rico the BABY'S CHOICE product manufactured by UCI and that VMG was prepared to take legal action for trademark infringement, seeking exemplary damages and attorney's fees.

18. On December 10, 1991, defendant received a letter of same date from UCI, defendant's supplier of the BABY'S CHOICE diapers. The letter stated that UCI would not be able to ship additional BABY'S CHOICE diapers into Puerto Rico given VMG's notice that VMG's concurrent use trademark registration included Puerto Rico as its exclusive territory.

19. Quesada did not communicate with either plaintiff or its counsel in response to the letters received.

20. Quesada made sales of UCI's BABY'S CHOICE product after receipt of plaintiff's counsel's letters and after the complaint herein was filed and served on defendant.

21. Defendant had actual notice of plaintiff's rights in the BABY'S CHOICE mark no later than November 29, 1991.

22. The trademark BABY'S CHOICE is prominently displayed on the VMG packaging and on the UCI packaging.

23. Upon examination of the packages in evidence and the trademarks thereto affixed, the Court finds that the marks are virtually identical.

24. The word components of the marks are the same, to wit: BABY'S CHOICE.

25. The packages sold by defendant and those sold by plaintiff each have affixed the names of the respective manufacturers. This information, however, is not as prominently displayed as the mark BABY'S CHOICE in each of the packages, which is printed in letter type at least five or six times larger than that used for the name of the manufacturer.

26. The colors used for each of the packages (light blue and white for boys, pink and white for girls) are almost identical in tone.

27. The disposable baby diapers sold by defendant under the BABY'S CHOICE mark and those manufactured by VMG are similar in size, overall appearance and color (pink for girls and blue for boys).

28. The letter type of the BABY'S CHOICE mark is different on each package.

## III—CONCLUSIONS OF LAW

The federal statute pertinent to plaintiff's action is the Lanham Act, 15 U.S.C. §§ 1051–1127. Plaintiff contends that defendant is in clear violation of two provisions of that legislation. One is § 32(1), 15 U.S.C. § 1114(1), which provides where pertinent as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...

. . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Plaintiff also claims defendant is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) which is similar to Section 32(1) except that it affords protection from infringement regardless of whether the person claiming protection is the owner of a registered trademark.

Section 43, 15 U.S.C. § 1125 provides: (a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . .

. . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Section 43(b) further provides that the importation of any such merchandise is also unlawful.

Pursuant to 15 U.S.C. § 1057(b) and § 1115(a), the registration of a mark shall be admissible in evidence as prima facie evidence of (a) the validity thereof, (b) plaintiff's ownership of the mark and (c) plaintiff's exclusive right to use the mark.

Before passing upon the key issue of likelihood of confusion, the Court will address the defenses to the registration raised by defendant to determine whether the evidentiary presumptions of a registration will come into play in this case, or whether they must be disregarded in ruling on the merits.

By way of counterclaim defendant attacks the validity of plaintiff's concurrent use registration on the following grounds:

In a written agreement signed on May 11, 1991 by the president of Universal Converter, Inc. having already signed said document on May 6, 1991 the president and the C.E.O. of VMG Enterprises, Inc. said two concurrent users of the purported trademark at issue in this case coluded [sic] in vilation [sic] of the antitrust laws of the United States to a horizontal division of all the territory of the nation between them for the exclusive sale of their respective paper products. This act constitute a per se vilation [sic] of Section 1 of the Sherman Act. In said same agreement said parties stipulate an unlawful variation of their concurrent trademark to cover products identified by various common words followed by the word *"Choice"* which act destroys the distinctiveness of their trade names rendering them vulnerable to attack under the law. Hereby plaintiff claims the removal of the registration of said concurrent trademark on both grounds herein stated above as a matter of law. (See Exh. I).

Defendant's Answer & Counterclaims filed on January 10, 1992 (docket No. 5) at 3–4. The "Exh. I" referred to by defendant is a copy of VMG/UCI's *1991* Agreement.[2]

### *The "Misuse of Trademark" Theory*

■ We discuss first defendant's allegation that VMG is misusing the trademark to violate the antitrust laws of the United States, a defense to a trademark registration specifically contained in the Lanham Act, 15 U.S.C. § 1115(b)(7).

---

**2.** The parties stipulated the *1991* Agreement into evidence. Defendant, however, objected to the *1986* Agreement and the UCI registration. The Court, however, finds that there is no prejudice to defendant in considering these documents as they only support defendant's factual contention that VMG and UCI agreed to a territorial trademark division for the BABY'S CHOICE mark. Admission of these documents in no way adds or detracts from the merits *vel non* of defendant's antitrust contentions which, by defendant's own admission, turn upon a question of law.

Defendant's challenge to the validity of plaintiff's concurrent trademark registration is based on the following premise: that the 1986 and 1991 concurrent use agreements between VMG and UCI constitute an illegal "horizontal division of all the territory of the nation between them for the exclusive sale of their respective paper products". Defendant's Answer & Counterclaims at 4.

Defendant's theory presents a novel issue: whether concurrent use agreements for territorial trademark divisions found valid by the Trademark Office violate the antitrust laws. The Court finds that they do not.

The parties seem to have found no cases touching on the precise question and neither has the Court. At the outset, however, it must be noted that the Lanham Act *itself* provides for concurrent trademark registrations. Section 2(d) of the Lanham Act, 15 U.S.C. § 1052, specifies the conditions and limitations under which concurrent registrations may be issued. Section 2(d), 15 U.S.C. § 1052(d) in pertinent part, provides as follows:

[I]f the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods in connection with which such marks are sued, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce ....Concurrent registrations may also be issued by the Commissioner when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods in connection with which such mark is registered to the respective persons.

Usually, an applicant for federal trademark registration is either the exclusive user of the mark or has superior rights to all others who may be using the mark. Occasionally, however, two or more entities independently and unknowingly develop rights to use identical trademarks on the same or similar goods. Section 2 sets forth an important exception to the basic principle of trademark law that the first person to adopt and use a mark acquires exclusive use thereof.

The concurrent use exception to the general right of a trademark owner to exclude the use of the mark by others and the geographical extent of such exclusion was established at common law. Where a subsequent user adopted and used the same or similar mark previously appropriated by a prior user for the same or related goods, the subsequent user was entitled to maintain its use of the mark over the objections of the prior user under certain circumstances. See generally, Herrell, Roger W. and Piper, Donald R., *Concurrent Use and Registration Rights*, 1983 APLA Quarterly Journal 177.

Recognizing the rights of the good faith concurrent user at common law, Congress provided statutory protection under Section 2(d) of the Lanham Act. This section of the Lanham Act supplements the rights of the parties at common law and combines to protect the continued use of a mark by concurrent users under specified statutory conditions, making available to each of the parties the benefits of federal registration statutorily available to a single registrant: the right to sue in Federal Court (15 U.S.C. § 1121); and the evidentiary presumption of validity (15 U.S.C. § 1057(b)); (15 U.S.C. § 1115), among others. *In re Beatrice Foods Co.*, 429 F.2d 466, 472 (C.C.P.A. 1970); see also *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 525–526 (Fed.Cir. 1987); *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512 (C.C.P.A.1980); and *Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312 (C.C.P.A.1976), which discuss section 2(d) in different contexts.

The leading case of *Beatrice Foods* may have represented the first opportunity for

a court to pass upon concurrent use proceedings under Section 2(d).[3] Commenting on the policy underlying the statute, the court stated:

> Considering now the policy behind this provision of the act, it is our view that the proviso reflects a recognition, by the framers of the statute, that occasions do and will arise where two or more persons will independently adopt the same or a similar trademark and use it under the same or similar circumstances, and indicates their concern that a mechanism be provided for an equitable resolution of the problems which such concurrent use creates. As we see it, this is nothing more than an application of the basic policies underlying the Lanham Act as a whole. (Footnote omitted)

*Id.*, 429 F.2d at 472.

In *Beatrice Foods*, the subsequent user, Fairway Foods, filed an application to register its mark and Beatrice Foods Co. filed an opposition alleging prior use of the same mark for related products. The parties signed a settlement agreement in which the country was divided into two territories with each party agreeing to recognize and honor the other party's exclusive trademark rights within the assigned territories. A concurrent use proceeding was subsequently instituted.

The facts leading to the 1986 and 1991 VMG–UCI concurrent use agreement present a scenario closely resembling that which was before the court in *Beatrice Foods*. VMG adopted and began using the BABY'S CHOICE mark on disposable diapers in interstate commerce on dates remarkably close to when UCI adopted and began using its mark. Similarly, VMG applied for federal registration of the mark only two months before UCI applied for its registration.

As in *Beatrice Foods*, VMG and UCI ultimately acknowledged that both had developed, through use, valid rights in the mark and settled their dispute by means of the 1986 concurrent use agreement. Thereafter, they applied for and obtained concurrent use registrations in 1989. Their certificates of registration contain trademark territorial limitations identical to the areas set out in the parties' 1986 Agreement.

As previously stated, in 1990–91, VMG and UCI had a dispute regarding the scope of the 1986 agreement and the resulting concurrent use registrations when VMG introduced goods bearing the marks GIRL's CHOICE and BOY's CHOICE into the territory covered by UCI's registration. UCI's infringement suit against VMG was resolved by the 1991 Settlement Agreement which clarified the scope of the 1986 Agreement.

■ Against this background, we deem it proper to first consider defendant's implied argument that VMG's concurrent use registration was improperly obtained.

■ The *Beatrice Foods* opinion sets forth the requirements for the issuance of concurrent registrations. The first requirement is that each party must have become entitled to use the respective marks as a result of concurrent lawful use in commerce prior to the earliest of the filing dates of the pending applications. The second requirement is the necessity of a determination that confusion, mistake, or deception is not likely to result from the continued use of the marks by the parties. *Beatrice Foods*, 429 F.2d at 473.

Once the registration is passed upon and issued by the Trademark Office, the trademark enjoys a statutory presumption of validity. 15 U.S.C. §§ 1057(b), 1115(a). VMG's an UCI's federal registrations necessarily reflect the Trademark Office's determination that the 1986 VMG–UCI agreement was found to be a good faith agreement to establish the respective concurrent trademark rights of the parties, and thereby reduce the likelihood of confusion among consumers with respect to the BABY'S CHOICE mark.

---

**3.** We say "may" because, while the Court in *Beatrice Foods* considered it the first time, the same Court in *Holiday Inn*, 534 F.2d at 314, suggested that *Beatrice Foods* was the second case dealing with the statute and, that *Silber v. Bullseye Corp.*, 254 F.2d 405 (C.C.P.A.1958) was the first.

Defendant cites the language in *Beatrice Foods* out of context to imply that the courts disfavor concurrent use agreements or that they should be examined with particular suspicion.

The full text of the Court's statement on the subject in *Beatrice Foods*, however, is as follows:

> Having decided that, once jurisdiction is settled by way of the parties' establishing prior concurrent use, the primary concern of the Patent Office, in determining whether and to what extent registrations are to be granted, is to be the avoidance of any likelihood of confusion, *we see no reason why agreements such as that worked out by the parties here should not be considered.* Unquestionably, such stipulations are never binding on the board. *Nevertheless, if it can be determined that they are in good faith, there can be no better assurance of the absence of any likelihood of confusion, mistake or deception than in the parties' promises to avoid any activity which might lead to such likelihood.* It is not to be inferred that the Patent Office should blindly adhere to any agreement or territorial stipulation made by the parties. Such arrangements should always be critically appraised. *But the practical value of accepting agreements such as this, when made in good faith, should be apparent. We see no reason why they should not be given effect when it is plain that the statutory requirement of assuring the avoidance of confusion, mistake or deception is satisfied thereby.* (Emphasis added)

429 F.2d at 474.

The above expressions made it clear that, while the (Trademark Trial and Appeals Board) and the Trademark Office should review these agreements with a critical eye, their practical value is evident. The Court even suggests that the parties' voluntary accord, if in good faith, may provide the best possible assurance of the absence of the likelihood of confusion.

Defendant has pointed to no facts that would lead this Court to believe that the Trademark Office did not critically appraise and analyze the VMG/UCI agreement before approving the registrations. The Trademark Office certainly could have modified the parties' territorial apportionments if it had deemed it necessary. This is even contemplated at page 8 of the *1986* Agreement:

> In the event the United States Patent and Trademark Office objects to such a division of territories, the parties will cooperate in a good faith attempt to agree on a redefinition of their territories or on other steps necessary to meet the requirement of the United States Patent and Trademark Office. The goal of the parties is that any such redefined territories will be as close as possible to the territories as defined in paragraph 1 above. In the absence of an Agreement, the matter will be arbitrated as set forth in paragraph 14 of this Agreement.

Thus, the parties recognized that the Trademark Office was not bound by the territories set by them. Defendant may not lightly question the Trademark Office's decision to grant VMG the concurrent use registration at issue here. VMG's concurrent use registration allows this Court to presume, by statute, that the U.S. Patent and Trademark Office passed upon the 1986 VMG/UCI concurrent use agreement and found it to be in good faith and otherwise in compliance with the statutory and judicial requirements for concurrent use registration.

Defendant has not even suggested, let alone proved, facts that would reasonably lead this Court to find that the requirements set forth in *Beatrice Foods* and in 15 U.S.C. § 1052(d) were not complied with and that, consequently, VMG's registration must be invalidated.

Defendant's more direct argument, however, is brought under 15 U.S.C. § 1115(b)(7), which essentially provides that a federal trademark registration is conclusive evidence of a registrant's exclusive right to use the mark in commerce, unless it is shown that the mark has been or is being used to violate the antitrust laws of the United States.

■ Defendant's theory is that VMG's and UCI's concurrent use registrations are based on agreements which divide trademark territories, and that therefore we are in the presence of "non-competition" agreements of the type which constitute a violation of the antitrust laws. As a corollary point, defendant alleges that VMG's demand to UCI that the latter cease selling to defendant constitutes an instance of "refusal to deal" conduct also prohibited by antitrust statutes. We disagree.

It should be clear from the above discussion of concurrent use principles, that the territorial division in question is legitimate under both common law and by statute, as intended to promote the underlying principles of the trademark laws in general and the Lanham Act, to wit: the avoidance of consumer confusion and protection of a party's investment in developing the goodwill of its products. *Beatrice Foods*, 429 F.2d at 472, n. 10.

The concurrent use agreement, and the registration that followed it, did not "create" a trademark territorial division for the BABY'S CHOICE mark between VMG and UCI; it merely recognized it. By 1986, VMG and UCI were already engaged in the use of the BABY'S CHOICE mark in different territories, thereby *de facto* and by independent (*not* concerted) action developing the trademark territorial division. Each party enforced its common law rights in the trademark territory it had developed to the point that litigation ensued and only thereafter was an agreement reached. Thus, in essence, the parties's agreement for a territorial trademark division results not from some illegal, mutually pre-arranged scheme, but from the recognition (after litigation) that the division was already a reality as a matter of trademark law. The concurrent registration provisions of the Lanham Act merely recognize situations such as this and provide a mech-

anism for the equitable resolution of the problems created by it. *Beatrice Foods*, 429 F.2d at 472.

Similarly, VMG's demand to UCI for discontinuation of sales to Quesada is not an illegal event of "refusal to deal", but rather one of enforcement by VMG of its legally acquired concurrent use rights.

Defendant has offered not one citation to statutory or case law to the effect that concurrent trademark use agreements constitute misuse of a trademark for antitrust purposes. Moreover, defendant's approach that plaintiff's alleged antitrust violations constitute unclean hands that require cancellation of plaintiff's registration, has not received favorable treatment by the courts, and one leading commentator points out that there has not been even one reported case where a court has fully accepted such an argument.[4] McCarthy, J. Thomas, *Trademark and Unfair Competition*, § 31.24 (2d ed. 1984).

Other than the existence of a concurrent trademark use agreement, defendant has alleged no specific act in support of its claims of violation of the Sherman Act, 15 U.S.C. §§ 1 et seq. Thus, the Court is left with the bare proposition that the agreement between plaintiff and UCI providing for concurrent use and registration of a trademark is a "per se" violation of the antitrust laws.

An attack based on the Sherman Act and in response to a trademark infringement complaint requires that defendant prove the elements of an antitrust violation. *Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860, 872 (E.D.Mo. 1977). Defendant has merely restated general principles of antitrust law without specifically showing how the plaintiff has used the trademark for improper antitrust purposes. Defendant's only allegation is that VMG and UCI engaged in the territorial division of a trademark.

4. The case relied on by defendant, *Phi Delta Theta Fraternity v. J.A. Buchroeder & Co.*, 251 F.Supp. 968 (W.D.Mo.1966), actually refers to a denial of plaintiff's motions for summary judgment and for dismissal of defendant's antitrust counterclaims, based on facts stipulated for purposes of the motions. The Court was careful to point out that the counterclaims survived the motions *under the stipulated facts*, and that the antitrust violations, *if proven at trial*, would provide the basis for treble damages and injunctive relief. *Id.* at 974. Thus, *Phi Delta* is not a decision on the actual merits of the antitrust counterclaims.

Even assuming that defendant could establish that a concurrent trademark use agreement constitutes a per se violation of the Sherman Act, no evidence has been produced by defendant on the issues of "relevant market" (both as to the "product" and its "geographic" component), "monopoly power" and "willfulness" which are essential to establish a case under Section 2 of the Sherman Act.

Defendant must admit, in view of its president's testimony at deposition, that while UCI is prevented from selling its diapers in Puerto Rico under the "Baby's Choice" trademark as per the concurrent use and registration agreement, UCI nonetheless sells its diapers in Puerto Rico under the "Cuddles" trademark and defendant sells one or two containers monthly of the product here. See deposition of Gonzalo Quesada at 14, 21 and 74. It also appears from the evidence that VMG is allowed to sell the "Wee-Fits" brand of diapers in UCI's territory.

Therefore, for purposes of the Sherman Act's main concerns—the consumer and the benefits it derives from competition—it appears that UCI diapers products are available and compete in Puerto Rico and that VMG diapers are available and compete in UCI's territory. On the "relevant market" element, the Supreme Court has declared that no alleged monopoly exists "where there are market alternatives that buyers may readily use for their purposes ..." *U.S. v. E.I. Du Pont De Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956).

As far as "monopoly power" is concerned, it only exists when the alleged infractor has the power to control prices or exclude competition. *Id.*, 351 U.S. at 391, 76 S.Ct. at 1004–05. Defendant has not alleged nor established that "BABY'S CHOICE", or plaintiff for that matter, dominates the market, and we doubt it could do so in view of the obvious presence of other disposable diaper brands in the market.

■ Nor has defendant proffered any evidence on the issue of willful acquisition or maintenance of the alleged monopoly

power in the relevant market. Market dominance does not establish, in and of itself, a violation of the Sherman Act, for the law does not penalize "[g]rowth or development as a consequence of a superior product, business acumen or historic accident". *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966).

The abuse of the antitrust defense has led the courts to develop a "[j]udicial reluctance to permit every case for trademark infringement to expand into a major antitrust action ..." *Rolls–Royce Motors Ltd. v. A & A Fiberglass, Inc.*, 428 F.Supp. 689, 697 (N.D.Ga.1977). Thus, dismissal of antitrust defenses is quite common, particularly when they rest on nothing more than mere allegations. See *Rayette–Faberge, Inc. v. Riverton Laboratories, Inc.*, 1968 Trade Cases ¶ 2,643 (D.N.Y.1968).

Defendant's antitrust defense and counterclaim is based *exclusively* on the existence of concurrent use agreements, but it has pointed to no statute or authority standing for the proposition that the antitrust laws of the United States allow parties to encroach upon the trademark rights of others or promote the invalidation of agreements otherwise found by a federal agency to be in furtherance of *bona fide* and long standing principles of trademark law.

■ Nor has defendant pointed to any legal authority that would support a conclusion that the concurrent use registration provisions of the Lanham Act are somehow preempted or invalidated by the antitrust laws of the United States. As explained by Professor McCarthy:

Simplistically put, the antitrust laws prohibit private agreements which interfere with the normal ebb and flow of free competition. Unfair competition law, of which trademark protection is an integral part, attempts to insure that even "free" competition remains "fair" competition. There is no basic inconsistency between "free" competition and "fair" competition. "Competition" may be vigorous, but not deceptive." For example, "free"

competition as enforced by the antitrust laws does not in any way require that the courts permit confusingly similar use of trademarks. Gaining business through the deceptive use of trademarks may be "free" indeed, but it is not "fair." As the Fifth Circuit stated:

"The antitrust laws require competition, not piracy. The essence of competition is the ability of competing goods to obtain public recognition based on their own individual merits. A product has not won on its own merit if the real reason the public purchases it is that the public believes it is obtaining the product of another company. There is not now nor has there ever been, a conflict between the antitrust laws and trademark laws or the laws of unfair competition."

McCarthy, § 31.23.

We therefore hold that the concurrent use agreements at issue here, providing for territory trademark divisions which have been approved by the Trademark Office, do not, without more, constitute a misuse of a trademark for antitrust purposes under Section 1115(b)(7) that would cause cancellation of plaintiff's trademark registration. Said facts are also insufficient to establish a counterclaim under the antitrust laws relied upon by defendant.

Defendant must also realize that, even had it been successful in invalidating the registration under 15 U.S.C. § 1115(b)(7), plaintiff would still have superior common law rights to the mark BABY'S CHOICE by virtue of having used it in Puerto Rico prior to defendant. The cited "antitrust misuse" defense, if available, only deprives the registrant of the evidentiary advantage of registration, it does not strip him of his trademark. See McCarthy, §§ 31.25 and 32.44.

### The "Loss of Distinctiveness" Theory

■ Our next inquiry is directed to defendant's allegation that plaintiff's acts have caused the loss of distinctiveness of its BABY'S CHOICE marks. Defendant's hypothesis is that plaintiff supposedly caused a loss of the distinctiveness of its BABY'S CHOICE mark by having agreed

in the 1991 VMG–UCI Agreement that it would avoid selling into UCI's territory any products bearing marks with the word "choice". Defendant contends that such agreement "destroyed" plaintiff's trademark. The argument, however, finds no support in the law.

First of all, it is evident from the 1986 and 1991 agreements that their purpose was to avoid possible consumer confusion as to the mark "Baby's Choice". As a follow up to that, the parties in 1991 recognized that their use of "Choice"-formative marks for diaper-related products in the other party's territory could also create confusion in the consumers' mind as to the source of the products. The 1991 agreement is only consistent with the 1989 concurrent use registrations and does not in any part thereof state or suggest a claim of entitlement, by either party, to the mark "choice" independent of other words. In any event, defendant cites no case to support the strange proposition that because a party refers to a mark or a component thereof in a document (not available to the general public) it is thereby diluting its distinctiveness.

■ The mark at issue in this case is "Baby's Choice", not "Choice". The former is actually a suggestive term as applied to disposable diapers. At best, it merely suggests a characteristic of the product (i.e. a high quality that makes it the choice of infants). Suggestive terms are protectible unless by their usage they become generic. No such generic or descriptive usage has been alluded to here. Defendant has not propounded any evidence to demonstrate that consumers use the words "Baby's Choice" or "choice" to refer to diapers in a descriptive of generic sense.

In conclusion, the defendant has not established the loss of distinctiveness of plaintiff's BABY'S CHOICE mark. First, because the mark and registration at issue here is "BABY'S CHOICE", not "Choice". Secondly, because there is no legal basis for the argument that a mark can be "destroyed" by reference in a private document to one of its word components. Fi-

nally, the mark "Baby's Choice" is not and has not become descriptive or generic as applied to the goods sold under such name, as recognized by the Trademark Office. Once registration is allowed, the mark enjoys a presumption of validity and the burden is on the party that seeks to have it cancelled. 15 U.S.C. § 1115. Defendant has not overcome that presumption.

In summary, defendant has presented no valid grounds to support its two defenses. For that same reason, the counterclaims cannot survive and defendant's motion for injunctive relief must be denied.

### Likelihood of Confusion

We now focus on the factor considered the touchstone of an action for trademark infringement whether under the Lanham Act or under common law: the likelihood of confusion. The test for trademark infringement under Sections 32(1) and 43(a) of the Lanham Act, and under the common law of unfair competition is whether the use of the trademark by the alleged infringer is likely to cause confusion. 15 U.S.C. § 1114(1)(a). See *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482 (1st Cir.1981); *Purolator, Inc. v. Efra Distributors, Inc.,* 687 F.2d 554 (1st Cir.1982); *Davidoff Extension, S.A. v. Davidoff Comercio E Industria Ltda.,* 747 F.Supp. 122, 127 (D.P.R.1990). Only a *likelihood* of customer confusion, rather than evidence of actual confusion, is necessary to establish a probability of success on the merits in an infringement suit. *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 816 (1st Cir.1987); *E. Remy Martin & Co., S.A. v. Shaw–Ross International Imports, Inc.,* 756 F.2d 1525, 1529 (11th Cir.1985); *Baker v. Simmons Co.,* 307 F.2d 458, 461, 463 (1st Cir.1962).

The First Circuit has set forth certain elements that are to be considered in evaluating the likelihood of confusion issue, to wit, (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in using the mark, and (8) the strength of plaintiff's mark. See *Keds Corp. v. Renee Intern. Trading Corp.,* 888 F.2d 215, 222–223 (1st Cir.1989); *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 28–32 (1st Cir.1989).

■ Quesada does not address the above elements. It simply denies the likelihood of confusion by merely contending that since the BABY'S CHOICE merchandise it sells is clearly marked as manufactured by UCI and not by VMG, confusion is not likely. The Court must again disagree.

■ Even where defendant clearly marks its product with its company name, similarity and thus, likelihood of confusion, may be found. *Boston Athletic Ass'n,* 867 F.2d at 29; see also, *Astra Pharmaceutical Products v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1205 (1st Cir.1983). The fact that the company name is in the package does not generally excuse infringement and might even increase confusion by linking a different house mark to plaintiff's good will, since consumers might think there is a relationship between the parties. *Banff, Ltd. v. Federated Dept. Stores, Inc.,* 638 F.Supp. 652 (S.D.N.Y. 1986). The argument that the addition of defendant's house mark prevents likely confusion has been labeled a "smoke screen" and a "poor excuse" for a blatant infringement because customers are likely to think that the plaintiff had licensed, approved or otherwise authorized the defendant's use of the mark. *International Kennel Club, of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079 (7th Cir.1988). These cases suggest that the use of the UCI name in the package may actually *add* to the confusion.

■ Further, the fundamental issue is whether the ordinary person in the marketplace is likely to be confused. In weighing the evidence of likelihood of confusion, the Court must strive to place itself in the shoes of a prospective purchaser. In this role, the Court must take into account the ordinary purchaser's capacity to discriminate as well as his propensity for carelessness. Accordingly, an overly analytical ap-

proach with close attention to differences is less important than the overall impression of general similarity. See McCarthy, supra, § 23.17.

Consumer confusion in this case is more than likely. Defendant does not and cannot deny the similarity of the marks and of the goods. The marks are identical and sound the same when pronounced (BABY'S CHOICE). The marks consist of the same word components (BABY'S CHOICE), mean the same and are both applied to disposable baby diapers. Even the color combinations used for the packaging (light blue and white for boys, pink and white for girls) and for the diapers themselves are strongly similar in tone if not identical. While there is a difference in the letter type used for the words BABY'S CHOICE, this difference is outweighed by the similarities in the overall appearance of the packages.

It has been held that where the marks and products are identical, a likelihood of confusion *must* be presumed. See *Crown Indust. Products Co. v. Crown Central Petroleum Corp.*, 440 F.2d 446, 448 (C.C.P.A.1971); *Polo Fashions, Inc. v. Fernández*, 655 F.Supp. 664, 669 (D.P.R.1987); Callmann, Unfair Comp., Trademarks & Monopolies, § 20.02 (4th Ed.).

In addition, defendant has not disputed the fact that the BABY'S CHOICE product it sells and that sold by VMG are both intended for the same type of customers, to wit: parents or providers of babies and small children. The depositions on record also indicate that plaintiff's distributor and defendant sell in the same trade channels, as former customers of plaintiff's distributor have purchased the UCI product in substitution of plaintiff's.

Finally, the defendant's intent in using the BABY'S CHOICE mark and cashing in on plaintiff's goodwill is clearly evident from its continued selling of the product even after being placed on notice that plaintiff had the exclusive rights to sell under the mark in Puerto Rico. It has been held that the knowing use by an infringer of a trademark *identical* to that of the trademark owner is strong evidence of intention-

al infringement and likelihood of confusion. *Davidoff,* 747 F.Supp. at 130, see also, *Plasticolor Molded Products v. Ford Motor Co.,* 698 F.Supp. 199, 201 (C.D.Cal. 1988).

The effect of plaintiff's November 7, 1989 Concurrent Use Registration of the BABY'S CHOICE trademark for disposable baby diapers was to give constructive notice to everyone of the ownership of its mark. 15 U.S.C. § 1072. Cf. *Geoffrey, Inc. v. Toys 'R Us (Nosotros Somos Los Juguetes), Inc.,* 756 F.Supp. 661, 665 (D.P.R.1991); *Davidoff,* 747 F.Supp. at 127. In addition, as will be discussed next, defendant had actual notice of plaintiff's rights and knew that a similar product was being sold in Puerto Rico. See discussion, *infra,* at p. 662. By electing to sell plaintiff's mark in Puerto Rico even after being put on actual notice that plaintiff had the exclusive rights to the mark, defendant acted willfully and in bad faith, seemingly bent on profiting from the confusion generated and relying on the goodwill and strength of plaintiff's trademark for its own benefit.

All of the foregoing factors point to the conclusion that defendant's use of the BABY'S CHOICE trademark is likely to cause confusion and violates plaintiff's rights under Sections 32(1) and 43(a) of the Lanham Act.

## IV—REMEDIES

 Based on the foregoing, the Court finds that defendant has infringed on plaintiff's trademark rights. In addition to permanent injunctive relief, plaintiff requests an award for treble damages and a specific finding that the case of caption is an exceptional one pursuant to 15 U.S.C. § 1117(a). As a result thereof, plaintiff requests an award of reasonable attorneys fees.

Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a) when a violation of any right of the registrant of a mark registered in the Trademark Office is established, plaintiff shall be entitled to recover defendant's profits, any damages sustained by the plaintiff, and the costs of the action.

In addition, Section 35 gives courts the discretionary power to increase the damage award up to three times the actual damage caused. Treble damages are granted when the defendant's infringing actions are deemed to have been made "knowingly and willfully". *Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir.1989); *Sun Products Group, Inc. v. B & E Sales Co., Inc.*, 700 F.Supp. 366 (E.D.Mich.1988); *Polo Fashions, Inc. v. Rabanne*, 661 F.Supp. 89 (S.D.Fla.1986); *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F.Supp. 1143 (S.D.N.Y.1986).

Section 35 also provides that a court may, in exceptional cases of trademark infringement, award reasonable attorneys' fees to the prevailing party. Generally, courts define an "exceptional" case of infringement as one involving willful or deliberate conduct on defendant's part. *Schroeder v. Lotito*, 747 F.2d 801 (1st Cir. 1984); see Annotation, Award of Attorneys' Fees Under § 35(a) of Lanham Act (15 U.S.C.S. § 1117(a)) Authorizing Award in "Exceptional Cases", 82 A.L.R.Fed. 143.

In a case similar to the one at bar, the United States District Court for the Western District of Michigan held that a defendant had engaged in deliberate and willful infringement when it continued to use and sell the infringing product even after the trademark holder protested and sent a cease and desist letter to defendant requesting him to stop using the trademark. See *Michigan Hosp. Ass'n v. Babcock*, 736 F.Supp. 759 (W.D.Mich.1990). Similarly, in *Raufast S.A. v. Kicker's Pizzazz, Ltd.*, 208 U.S.P.Q. 699 (E.D.N.Y.1980), the Court noted that defendant's continued use of plaintiff's mark despite its protests to that effect made the infringement deliberate and wholly unjustified. Under those circumstances, the Court held that the case was exceptional and justified an award of reasonable attorneys' fees to plaintiff.

The record shows that in addition to constructive knowledge, defendant Quesada had actual notice of plaintiff's rights no later than November 29, 1991 when it received a letter from plaintiff's counsel.

The evidence also reveals that defendant received another letter from plaintiff on December 9, 1991 reiterating its demand that defendant stop selling BABY'S CHOICE merchandise. The letter also specifically warned defendant that plaintiff was prepared to take legal action seeking exemplary damages and attorneys' fees if defendant insisted in its conduct. Defendant also received a letter from UCI, defendant's supplier of the infringing diapers, stating that UCI would not continue to sell in Puerto Rico in view of VMG's assertion of its trademark rights.

Defendant, however, did not respond in writing or otherwise to plaintiff's letters and continued selling. Despite the specific information provided in the letters, defendant made no inquiries regarding the legality of the goods it was about to import. Without consulting counsel, defendant's president reached his own conclusion that there was nothing illegal with the sale of the products. See Quesada deposition at 63. Also, defendant's president testified at his deposition that before importing the infringing mark into Puerto Rico, he was aware that a similar mark and product was already being sold here. (Quesada's deposition, at p. 23). This adds to the element of intent to profit from plaintiff's goodwill.

Thus, in view of the foregoing, the Court finds that defendant acted willfully, knowingly and in a deliberate fashion. Certainly, defendant was not the "innocent infringer who mistakenly adopted another party's trademark." *Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.*, 222 U.S.P.Q. 302, 1983 WL 425 (S.D.Fla.1983). This Court specifically finds that this is an exceptional case pursuant to 15 U.S.C. § 1117(a), entitling plaintiff to an award of the costs and reasonable attorney's fees incurred in prosecuting this action. In addition, the Court finds that defendant's willful infringement of plaintiff's rights warrants the trebling of the actual damages which plaintiff may in due course prove.

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED:

1—Defendant and its agents, officers, employees, attorneys and all persons in active concert or participation with them having knowledge of this order, are hereby PERMANENTLY ENJOINED AND RESTRAINED from, in any manner, directly or indirectly, using the mark "BABY'S CHOICE" alone or in combination with any other name, mark or term or any confusingly similar designation, in connection with the sale of disposable baby diapers or similar goods in Puerto Rico;

2—Defendant and its officers, employees, agents, attorneys and any other persons in active concert or participation with them having knowledge of this order, are hereby PERMANENTLY ENJOINED AND RESTRAINED from selling in Puerto Rico disposable baby diapers bearing the mark "BABY'S CHOICE", manufactured by UCI;

3—Defendant is likewise ORDERED to cancel and withdraw any type of promotion or advertising of the mark "BABY'S CHOICE";

4—Defendant is ORDERED to deliver and make available to plaintiff any and all products bearing the mark "BABY'S CHOICE" presently under defendant's possession and/or control, and those hereinafter received by defendant from any source. To that end, defendant, through its counsel, shall contact the following representative of plaintiff on or before *April 10, 1992* to coordinate the delivery of the product:

Joe D. Tanner, Esq.

Edgar Cartagena Santiago, Esq.

c/o BROWN, NEWSOM & CORDOVA

Plaza Scotiabank—Sixth Floor

273 Ponce de León Avenue

Hato Rey, Puerto Rico 00917

Tel. 758–3500

5—Defendant is ORDERED to submit to the Court no later than *April 30, 1992* an Affidavit detailing the actions taken to comply with this Order. Said Affidavit shall include the date when defendant last sold the infringing product, the customer to whom it sold and the quantity sold.

6—This Court having determined that the case before us is an exceptional one under 15 U.S.C. § 1117(a), plaintiff is awarded reasonable attorneys fees.[5]

7—Pursuant to 15 U.S.C. § 1117(a) defendant is also assessed the costs of this action.[6]

8—Pursuant to 15 U.S.C. § 1117(a) and in view of the circumstances in this case, the Court finds plaintiff is entitled to recover from defendant *three times* the amount of actual damages, if any, to be eventually proved by plaintiff.

9—Plaintiff having also requested sanctions under Rule 11 Fed.R.Civ.P., defendant is hereby ORDERED to file, no later than *April 30, 1992*, a memorandum showing cause why plaintiff's request for Rule 11 sanctions should not be granted in this case.

10—Defendant's counterclaims are hereby DISMISSED with prejudice and its motion for preliminary injunction is hereby DENIED. Judgment shall be entered accordingly.

A hearing on damages is hereby set for *May 21, 1992 at 9:30 a.m.* The parties shall meet on or before *May 12, 1992* to exchange their individual positions of the proposed Pretrial Order and shall file a proposed Pretrial Order no later than *May 14, 1992* limited to the issue of damages. The Pretrial Conference is set for *May 19, 1992 at 2:30 p.m.*

IT IS SO ORDERED.

---

**5.** Plaintiff shall file a verified petition for attorney's fees within *fifteen (15) days* after conclusion of the hearing on damages.

**6.** Plaintiff shall file a Bill of Costs within *fifteen (15) days* after conclusion of the hearing on damages.